# In the United States Court of Federal Claims

No. 16-1365 C

Filed: November 3, 2016

| | |
|---|---|
| ****************************************<br>*<br>FAVOR TECHCONSULTING, LLC,    *<br>*<br>         Plaintiff,    *<br>*<br>v.    *<br>*<br>*<br>THE UNITED STATES,    *<br>*<br>         Defendant.    *<br>*<br>**************************************** | 28 U.S.C. § 1491(b)(2) (Administrative Dispute Resolution Act Jurisdiction);<br>31 U.S.C. §§ 3553(d)(3), (d)(4)(A) (Competition in Contracting Act);<br>48 C.F.R. § 8.405-3(b)(3) (Blanket Purchase Agreements, Notice of Award);<br>Rules of the United States Court of Federal Claims ("RCFC") 11(b), (c)(3), (Sanctions);<br>RCFC 57 (Declaratory Judgment);<br>RCFC 65(d) (Injunction) |

**MEMORANDUM OPINION AND ORDER IMMEDIATELY
INSTITUTING THE AUTOMATIC STAY**

**I.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY.[1]**

On May 26, 2016, the Defense Intelligence Agency ("DIA") issued Solicitation No. HHM402-16-R-033 ("the Solicitation") announcing that it planned to issue three Blanket Purchase Agreements ("BPAs") for Enterprise Senior Information Technology Advisors services,[2] and Enterprise Information Assurance services.[3]  *See* Compl. at ¶12.

---

[1] The relevant facts are derived from the October 19, 2016 Complaint ("Compl.") and the Exhibits attached to the October 19, 2016 Memorandum Of Points And Authorities In Support Of Plaintiff's Motions ("Pl. Mem. Exs. A–F").

[2] According to the December 16, 2015 Statement of Work ("SOW"), included in the Government's October 24, 2016 Appendix ("Gov't App'x"), the "Enterprise Senior Information Technology Advisors Program" was established to provide "assistance in IT planning, program management, and development, requirements management services and acquisition support, integration and engineering services, systems security and information assurance engineering services, and services in portfolio management and process improvement." Gov't App'x at A108.

[3] "Information Assurance" is defined in the SOW as "engineering and planning functions in support of activities that enhance the security posture of the enterprise." Gov't App'x at A136. These functions include "supporting information S&IA–Systems Security Engineering–activities and information assurance analysis, as well as employing systems and Information Assurance best practices spanning product evaluation, testing, analysis, and providing recommendations." Gov't App'x at A136.

On June 8, 2016, Favor TechConsulting, LLC ("FTC") submitted an offer to DIA. Compl. at ¶13. On September 27, 2016, however, FTC received an e-mail from a DIA Contracting Officer stating that three BPAs were awarded to other companies. Compl. at ¶15. Attached to the e-mail was an Unsuccessful Offeror Notification And Debriefing for FTC ("the Award Notice"), dated September 27, 2016. Pl. Mem. Ex. A. The Award Notice specifically stated that the three BPAs were awarded as follows: BPA HHMM402-16-A-0009 to Axiologic Solutions, LLC ("Axiologic"); BPA HHM402-16-A-0010 to Assured Contracting Solutions ("ACS"); and BPA HHM402-16-A-011 to Invictus International Consulting ("IIC").[4] Pl. Mem. Ex. A.

On October 7, 2016, FTC filed a bid protest with the Government Accountability Office ("GAO"), Case No. B-413937, challenging DIA's evaluation criteria. Pursuant to the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3553(d)(3)(A)–(d)(4),[5] FTC was entitled to an automatic stay of performance. Compl. at ¶4.

---

[4] Axiologic, ACS, and IIC are collectively referred to in this Opinion as "the awardees."

[5] Section 3553(d)(3)(A) of the CICA, in relevant part, provides:

If the Federal agency awarding the contract receives notice of a protest in accordance with this section during the period described in paragraph (4)—

    (i) the contracting officer may not authorize performance of the contract to begin while the protest is pending; or

    (ii) if authorization for contract performance to proceed was not withheld in accordance with paragraph (2) before receipt of the notice, the contracting officer shall immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract.

31 U.S.C. § 3553(d)(3)(A).

Section 3553(d)(4) provides:

The period referred to in paragraphs (2) and (3)(A), with respect to a contract, is the period beginning on the date of the contract award and ending on the later of—

    (A) the date that is 10 days after the date of the contract award; or

    (B) the date that is 5 days after the debriefing date offered to an unsuccessful offeror for any debriefing that is requested and, when requested, is required.

31 U.S.C. § 3553(d)(4).

On October 13, 2016, DIA's counsel notified FTC that the BPAs were awarded on September 26, 2016, not September 27, 2016, so that Plaintiff's GAO protest was untimely and the automatic CICA stay would not be instituted. Compl. at ¶19.

On October 14, 2016, FTC filed a Pre-Filing Notice Of Protest, as required by Rule 2 of Appendix C of the Rules of the United States Court of Federal Claims ("RCFC"). Shortly thereafter, the Government contacted FTC and provided a copy of the cover pages of all three BPAs; the cover pages indicated that a representative of the respective awardees signed the BPA on September 26, 2016, and, under section 31c "Date Signed," indicated that the Contracting Officer also signed on September 27, 2016. Compl. at ¶¶22–24; Pl. Mem. Ex. F. The cover pages of the Axiologic and IIC BPAs also indicated, under section 3 "Award/Effective Date," that each contract's "Award Date/Effective Date" was September 27, 2016. Pl. Mem. Ex. F. The cover page of the ACS BPA indicated that the contract's "Award/Effective Date" was September 14, 2016. Pl. Mem. Ex. F.

On October 19, 2016, FTC ("Plaintiff") filed a Complaint in the United States Court of Federal Claims, together with: a Motion For Declaratory Judgment; a Motion For A Temporary Restraining Order; a Motion For A Preliminary Injunction; and a Memorandum Of Points And Authorities In Support Of Plaintiff's Motions ("Pl. Mem.").

That same day, the court convened a telephone status conference, during which the Government represented that, the stay was not being instituted, because this was a "mission critical" procurement and agency documents showed the actual date of award was September 26, 2016.

Thereafter, on October 19, 2016, the court issued a Memorandum Opinion And Temporary Restraining Order ("TRO"), to prohibit performance of the three BPAs until October 26, 2016, so the Government had time to demonstrate that award was made on September 26, 2016 and, if the procurement indeed was "mission critical," to obtain an override, pursuant to 31 U.S.C. § 3553(d)(3)(C).[6]

---

[6] 31 U.S.C. § 3553(d)(3)(C) provides:

The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—

  (i) upon a written finding that—

    (I) performance of the contract is in the best interests of the United States; or

    (II) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and

Since no response was forthcoming, the court convened a telephone status conference on the afternoon of October 24, 2016. The Government advised the court that a filing would be made later that same day. The court then extended the TRO until November 3, 2016, to give Plaintiff time to respond to the Government's filing. Later that day, the Government filed a Brief In Response To The Court's October 19, 2016 Order ("Gov't Resp."), and an Appendix including: internal DIA e-mails generated by the agency's Contracting Management System ("CMS"); the CMS Operations Manual; and Declarations from Donald Camden, the DIA Contracting Chief; Ryan Corcoran Luhman, the Contracting Officer for the relevant BPAs; and Holly Carr, a DIA Contracting Specialist.

On October 31, 2016, Plaintiff filed a Reply ("Pl. Reply").

## II.   DISCUSSION.

### A.   Jurisdiction.

Under the Administrative Dispute Resolution Act of 1995, 28 U.S.C. § 1491(b), the United States Court of Federal Claims has jurisdiction to hear actions brought by interested parties alleging the violation of "any . . . statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C § 1491(b). The United States Court of Appeals for the Federal Circuit has held that the automatic stay provision of the CICA, 31 U.S.C. § 3553, is a "statute in connection with a procurement." *RAMCOR Servs. Group v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999). The United States Court of Federal Claims therefore has jurisdiction, under 28 U.S.C. § 1491(b)(1), to adjudicate actions alleging violation of 31 U.S.C. § 3553. *See RAMCOR Servs. Group*, 185 F.3d at 1290 ("[T]his court determines that 28 U.S.C. § 1491(b)(1) grants the trial court jurisdiction over an objection to a violation of 31 U.S.C. § 3553(c)(2).").

### B.   Standard of Review.

The United States Court of Federal Claims is required to review an agency's compliance with 31 U.S.C. §§ 3553(d)(3) and (d)(4)(A) under the standards set forth in the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A). *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection [*i.e.*, in connection with a bid protest], the courts shall review the agency's decision pursuant to the standards set for in section 706 of title 5."). Section 706(2)(A) requires a determination that the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Citizens to Preserve Overton Park, Inv. v. Volpe*, 401 U.S. 402, 416 (1971). An agency action is arbitrary and capricious, "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of

---

(ii) after the Comptroller General is notified of that finding.

31 U.S.C. § 3553(d)(3)(C).

agency expertise." *Motor Vehicle Mfrs. Ass'n of the United States* v. *State Farm Ins. Co.*, 463 U.S. 29, 43 (1983).

### C. Plaintiff's October 19, 2016 Motions For Declaratory Judgment, Temporary Restraining Order, and Preliminary Injunction.

#### 1. Plaintiff's Argument.

Plaintiff argues that DIA should have instituted a 10-day automatic stay, pursuant to the CICA, 31 U.S.C. §§ 3553(d)(3) and (d)(4)(A), and DIA's failure to do so was arbitrary, capricious, and contrary to law. Pl. Mem. at 1.

On September 27, 2016, Plaintiff received the Award Notice, dated for the same day, so Plaintiff filed a bid protest with the GAO on October 7, 2016, *i.e.*, 10 days later. Pl. Mem. at 2. After Plaintiff was informed by DIA that its protest was untimely, Plaintiff filed a October 14, 2016 Pre-Filing Notice of Protest, and only afterward did the Government provide the cover pages of the three BPAs. Pl. Mem. at 3. Each was signed by the DIA Contracting Chief, Donald Camden, in section 31a ("Signature of Contracting Officer"), and each, under section 31c ("Date Signed"), indicated that the BPA was signed on September 27, 2016. Pl. Mem. Ex. F. In addition, both the Axiologic BPA and the IIC BPA indicated an "Award/Effective Date" of September 27, 2016. Pl. Mem. Ex. F.

As a matter of law, however, a contract is not awarded until the Contracting Officer signs the document. Pl. Mem. at 7 (citing *Caddell Constr. Co., LLC v. United States*, 120 Fed. Cl. 724, 726 (Fed. Cl. 2015). In this case, three BPAs show the date was September 27, 2016. ("In order for a contract to be deemed awarded, the contract officer must have signed[.]")). Other than the Award Notice, there was no online posting or other public notification that indicated the date of award was other than September 27, 2016. Pl. Mem. at 7–8.

Therefore, Plaintiff seeks a declaratory judgment that: (1) the BPAs were awarded on September 27, 2016; (2) DIA's decision not to implement the automatic stay was arbitrary, capricious, and contrary to section 3553(d)(3) of the CICA;[7] and (3) DIA must implement the CICA automatic stay until the GAO resolves Plaintiff's pending bid protest. Pl. Mem. at 1. A declaratory judgment is the appropriate relief in cases when the Government fails to comply with the automatic stay granted by the CICA. *Cf. URS Fed. Servs. v. United States*, 102 Fed. Cl. 674, 676 (2012) (determining that declaratory relief was the appropriate remedy in a CICA stay override case). In fact, the court may issue a declaratory judgment without considering the factors for granting injunctive relief. *See id.* ("When the court deems a declaratory judgment is the appropriate relief, the imposition of standards for injunctive relief is not required[.]"); *see also Supreme Foodservice FmbH v. United States*, 109 Fed. Cl. 369, 397 (2013) ("In creating the CICA stay of performance, Congress decided that the injunctive relief factors need not be invoked when

---

[7] Performance of a government contract is suspended under section 3553(d)(3), if the agency receives notice of a bid protest before the GAO within 10 days of contract award. *See* 31 U.S.C. § 3553(d)(4)(A) ("[The notice period] with respect to a contract, is the period beginning on the date of the contract award and ending on . . . the date that is 10 days after the date of contract award.").

a bid protest is timely filed with the GAO, instead requiring that contract performance be stayed automatically.").

In the alternative, Plaintiff argues that all four factors for injunctive relief are met, and, if the court determines that a declaratory judgment is inappropriate, the court should issue an injunction staying contract performance. Pl. Mem. at 10–13.

### 2. The Government's Response.

The Government responds that the documents in the October 24, 2016 Appendix evidence that the BPAs were awarded on September 26, 2016. Govt. Resp. at 1. Ms. Carr, a DIA Contract Specialist, declared under oath that the computerized Contract Management System ("CMS") distributed the final contracts on September 26, 2016, and CMS will not distribute a final contract without a signature page. Gov't App'x at A144-145. On September 26, 2016, the CMS distributed three "fully-executed contract packages" by e-mail to various DIA officers, including Ms. Carr and Mr. Corcoran Luhman, the Contracting Officer for the relevant BPAs. Gov't App'x at A160 (e-mail generated by CMS sent to DIA officers). The cover pages of all three fully-executed contract packages, attached to the e-mail, state that the contract was signed on September 26, 2016. Gov't App'x at A10 (IIC cover page); A96 (Axiologic Cover Page); A121 (ACS Cover Page).[8] In addition, included in the fully-executed contract packages were scanned copies of the handwritten signatures of representatives from all three awardees, *i.e.*, Axiologic, ACS, and IIC, as well as the handwritten signature of Mr. Camden. Gov't App'x at A244 (IIC signature page); A269 (Axiologic signature page); A295 (ACS signature page).[9] In addition, both Mr. Camden and Mr. Corcoran Luhman declared that the contracts were awarded and signed by the BPA awardees and Mr. Camden on September 26, 2016. Gov't App'x at A2 (Camden Declaration), A5 (Corcoran Luhman Declaration)).

The Government argues that the mandatory CICA stay applies only when an agency receives notice from the GAO, within 10 days of contract award. Gov't Resp. at 23 (citing 31 U.S.C. §§ 3553(d)(3)(A), (d)(4)); *see also Systems Plus, Inc. v. United States*, 58 Fed. Cl. 206, 208 (2005) (ruling that an automatic stay is not required when a protest is filed more than 10 days after contract award). According to the Government's interpretation of *Systems Plus*, however, "the relevant date for purposes of triggering the automatic stay in the GAO is the BPA award date . . . not the date the agency notified the protestor." Gov't Resp. at 3. Because the CMS e-mail and the declarations demonstrate that the contract was awarded on September 26, 2016, instead of September 27, 2016, the automatic stay should not be instituted

---

[8] The "Award/Effective Date[s]" on the IIC and Axiologic Cover Pages are listed as September 27, 2016. Gov't App'x at A10, A96. The "Award/Effective Date" on the ACS contract is listed as September 14, 2016. Gov't App'x at A121.

[9] The scanned signature pages retain a "Date Signed" of September 27, 2016. *See* Gov't App'x at A244 (IIC signature page); A269 (Axiologic signature page); A295 (ACS signature page).

Finally, although the Federal Acquisition Regulation ("FAR") provides that an awarding agency should give "timely notification to unsuccessful offerors," 48 C.F.R. § 8.405-3(b)(3), one day's notice is timely "under any reasonable definition."  Gov't Resp. at 3–4.

### 3. Plaintiff's Reply.

Plaintiff replies that the documents in the Government's October 24, 2016 Appendix, *i.e.*, the CMS materials and Declarations, are irrelevant, because they do not contradict the fact that the BPA signature pages show an award date of September 27, 2016, that serves as the only recordation of the award date since there was no public award notice.[10]  In addition, the Award Notice received by Plaintiff was dated September 27, 2016.[11]  Pl. Reply at 2.  In support, Plaintiff cites United States Court of Federal Claims cases where the contract was not considered executed and final until signed by the Contracting Officer.  *See JEM Transport, Inc. v. United* States, 120 Fed. Cl. 189, 195–96 (Fed. Cl. 2015) (determining that no contract is formed until the contract is signed by the Contracting Officer); *see also Bannum, Inc. v. United States*, 115 Fed. Cl. 257, 260 (2014) (finding that the solicitation's date of contract award was date the contract was signed by the Contracting Officer).

Plaintiff also points out that the Government's October 24, 2016 Appendix should be barred under the parol evidence rule, because it is extrinsic evidence.  Pl. Reply. at 3–4 (citing *Cooper Realty Co. v. United States*, 36 Fed. Cl. 284, 289 (1996) (defining parol evidence as "prior or contemporaneous evidence seeking to add to or vary the terms of a written agreement, when the parties have adopted the written agreement, when the parties have adopted the written agreement as an expression of their final intent.")).  But, custom and trade practice may be used to confirm the plain meaning of a document, and, "any reasonable government contractor" would, under these circumstances, rely on the BPA cover pages indicating the award date of September 27, 2016.  Pl. Reply at 45 (citing *Cheaves v. United States*, 108 Fed. Cl. 406, 409 (2013) ("[T]rade practice and custom may inform the meaning of an otherwise unambiguous term[.]")).

Plaintiff adds that the legislative history demonstrates that Congress enacted the CICA to "increase the use of competition in government contracting," and ensure the "availability of information needed not only by [the GAO] to make determinations in procurement protests, but also by interested parties to identify, and initiate actions against, solicitations and awards which they believe are unlawful."  H.R. Conf. Rep. No. 98–861 at 1421 (1984).  Typically, the only information a potential protester receives is the information provided by the procuring agency in the unsuccessful offeror notice.  Pl. Mem. at 8.  Accepting the Government's position in this case—*i.e.*, that the 10 day automatic stay period is to be measured from the date of the internal decision to award a contract, instead of the date that the bid protestor receives notice of award—would allow an awarding agency to withhold notification to offerors until the deadline for triggering an

---

[10] A public notice of award is not required under the FAR for the type of contract at issue, since BPAs are governed by FAR subpart 8.4.  *See* 48 C.F.R. § 5.301(b)(3) ("Notice is not required . . . if . . . the contract action is an order placed under subpart 16.5 or 8.4.").

[11] Nothing on the Award Notice indicates that the BPAs were awarded on any day other than September 27, 2016.

automatic stay passed, thereby allowing an agency to avoid the CICA automatic stay provisions by silence as to award. Pl. Mem. at 6.

    **4.**    **The Court's Resolution.**

        **a.**    **Plaintiff Has Been Deprived Of Its Statutory Right Under The CICA.**

The Government's failure to institute the CICA's automatic stay in this case is founded neither in fact nor law. The record is absolutely clear that Plaintiff learned of the contract award via the September 27, 2016 Notice of Award. The Notice of Award is marked "September 27, 2016," and no other date appears that awards the BPAs. Pl. Mem. Ex. A. Nor were there any other publically available notices of the award date, and nothing in the nearly 300-page October 24, 2016 Appendix submitted by the Government suggests anything to the contrary. In addition, the Government has not demonstrated, either in the two status conferences convened by the court in this case or in its filings, how Plaintiff was supposed to know that the contract was awarded by DIA on September 26, 2016.

The Government attempts to overcome the facts by suggesting that Plaintiff's Notice of Award within one day of the actual award date was "timely under any reasonable definition." Gov't Resp. at 3–4. Although this may be so, it does not overcome the evidence that the Notice of Award stated that award was made on September 27, 2016.

In addition, *Systems Plus, Inc. v. United States*, 58 Fed. Cl. 206, 208 (2005), does not stand for the rule suggested by the Government, that the automatic stay deadline is measured from the date of award, regardless of the knowledge of Plaintiff, nor is it precedent. *Systems Plus* concerned whether a bid protestor was entitled to an automatic stay under section 3353(d)(4)(B), because that section provides a 5 day deadline for an automatic stay, after a requested and required debriefing. *Id*. at 208 ("[The bid protestor] contends that, because a debriefing was required … the GAO's [notice that] a protest was pending triggered a suspension of performance under 31 U.S.C. § 3553(d)(4)(B)."). Instead, this case concerns section 3553(d)(4)(*A*), the section that provides a 10-day deadline from the date of contract award.

Congress enacted the automatic stay to provide the GAO with a "strong enforcement mechanism." H.R. Conf. Rep. No. 98–861 at 1435 (1984). The automatic stay provision cannot function, as intended, if potential bid protestors do not know how long they have to file before they lose their right to an automatic stay. Without knowledge of the actual award date, potential bid protestors would be forced to guess how much of the 10-day period was remaining before filing a protest with the GAO and effectively would be deprived of a statutory right.

The relevant implementing regulations require that "after award, ordering activities *should provide timely notification* to unsuccessful offerors," and, in cases where an award is based on factors other than price, the awarding agency should provide a "brief explanation of the basis of the award." 48 C.F.R § 8.405-3(b)(3) (emphasis added). For an offeror to exercise the right to file a protest before the GAO, the offeror is entitled to both notice of award and an explanation of why they did not receive the award.

An analogous provision, governing bid protests before the GAO, provides that:

Protests [other than protests based upon alleged improprieties in a solicitation] shall be filed not later than 10 days after the basis of protest is *known or should have been known* (whichever is earlier)[.]

4 C.F.R. § 21.2 (emphasis added ).

In other words, a potential bid protestor cannot be expected to file a bid protest before they know when an award is made and the grounds upon which a protest may be based.

Even assuming, *arguendo*, that the section 3553(d)(4)(A) 10-day deadline is measured regardless of the actual notice of the date of award, the Government has not proffered evidence in this case that the date of award was September 26, 2016. The BPAs surfaced only after Plaintiff was informed that the 10-day stay would not be instituted, but they all indicate an award date of September 27, 2016. The signature block on all three BPAs state that the "Date Signed" by the Contracting Officer was September 27, 2016. Gov't App'x at A118, A143, A244. In addition, two out of the three BPAs—the Axiologic and IIC awards, respectively—indicate that the "Award/Effective Date" of the Contract was September 27, 2016. Gov't App'x at A118, A244.

Although the BPAs indicate that they were signed by the awardees on September 26, 2016, (Gov't App'x at A118, A143, A244), the general rule is that a contract is not formed, until mutual intent to contract is expressed, including offer and acceptance. *See Trauma Service Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (providing that the requirements of a government contract are "mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government"). Acceptance by the Government requires agreement by a person with actual authority to bind the Government in contract. *Id.* In this case, the BPAs show that the documents were signed by the Contracting Officer, *i.e.*, the person authorized to bind the Government, on September 27, 2016, so that contract formation did not occur until that date.

The Government included in the October 24, 2016 Appendix internal DIA e-mails that demonstrate that the agency's CMS system generated a "fully-executed contract package" on September 26, 2016. The Government argues that these internal communications conclusively establish that the contract was signed on September 26, 2016, because, according to a sworn Declaration of a DIA contract specialist, "CMS will not distributed a final contract package without a signature page." Gov't Resp. at 1 (citing Gov't App'x at A144–145). [12] The fact that the contracts were shared internally within DIA on September 26, 2016, however, does not change the fact that the only notice furnished to Plaintiff stated a date of September 27, 2016. Of course,

---

[12] The October 24, 2016 Appendix also includes a DIA manual that instructs how Contract Specialists are to generate a fully executed contract package through operation of CMS. But, this manual is not legal authority; but internal guidance on how to operate the agency's *bookkeeping system.*

this is why the Government did not provide any legal authority for the proposition that the date of a computer-generated "contract package" takes precedence over the signed contracts at issue.

The Government declarants attempt to explain why the September 27, 2016 date on the face of the BPAs should be disregarded. Gov't App'x at A1–A3 (Declaration of Donald F. Camden); A4–A7 (Declaration of Ryan Corcoran Luhman); A144–148 (Declaration of Holly Carr). The Declarations essentially assert the following: (1) the September 27, 2016 date was "prepopulated" on the face of the BPAs, because the contracts were originally planned to be awarded on that date; (2) the BPAs were actually signed by hand by representatives of the awardees and by a DIA representative on September 26, 2016; (3) that DIA forgot to change and/or failed to notice the September 27, 2016 date before the documents were signed and uploaded into the CMS.[13] These Declarations, however, do not explain how Plaintiff was supposed to learn of the actual date of award, other than the Notice of Award sent by DIA. And, again, the Government cites no law in support of the proposition that intent of a contracting officer can vary the face of a signed contract. In other words, DIA did not institute the automatic stay, because it contends that internal agency documentation should control the date of award. But, that is contrary to the CICA's automatic stay provision.

For these reasons, the court has determined that DIA's decision not to institute the automatic stay, based on the timeliness of Plaintiff's filing was arbitrary, capricious, contrary to law and an abuse of agency discretion.

### b. Plaintiff Is Entitled To A Declaratory Judgment And A Permanent Injunction.

Congress authorized the United States Court of Federal Claims, in exercising bid protest authority, to "award any relief that the court considers proper," including declaratory relief. 28

---

[13] Ms. Carr declared that:

"[T]he September 27 date is a holdover from when I prepopulated dates in the contract documents based on my expectation that the contract awards would take place on that date . . . . Due to the end-of fiscal- year demands on my time, I forgot to correct the prepopulated September 27 signature dates on the BPAs before Mr. Camden signed them [on September 26, 2016]."

Gov't App'x at A147. In addition, Mr. Camden declared that:

"When signing the BPAs on September 26, I did not notice the September 27 date . . . . Even if I had noticed the September 27 date, I doubt I would have given it much significance [because] I was aware that the actual contract-award date is automatically generated through e-mails from CMS, and that the Contract Specialist has a practice of prepopulating dates in the contract documents to reflect the anticipated date of contract award."

Gov't App'x at A2.

10

U.S.C. § 1491(b)(2). When a plaintiff's remedial request for a declaratory judgment is "tantamount to a request for injunctive relief," the United States Court of Federal Claims is required to apply the traditional four-factor test for injunctive relief. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228 (Fed. Cir. 2004).[14]

To date, our appellate court has not expressly held that a declaratory judgment has the effect of an injunction in the context of an agency failing to institute the CICA automatic stay. Therefore, the court believes the better course is to issue an injunction, particularly since the four factors are met: *i.e.,* (1) the litigant has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See eBay, Inv. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

The first and second factors weigh in favor of Plaintiff. In the absence of the automatic stay, Plaintiff will suffer an irreparable competitive harm, an injury that is difficult to quantify. For this reason, Congress decided that the appropriate remedy in such circumstances was an automatic stay. *See* H.R. Conf. Rep. No. 98–861 at 1435.

The third factor also weighs in favor of Plaintiff. Plaintiff's irreparable competitive harm outweighs any loss suffered by DIA during the short period that Plaintiff's protest will be pending before the GAO. Again, by enacting the automatic stay provision, Congress determined that the balance of harms weighs in favor of suspending contract performance.

With respect to the final factor, the CICA provides that an awarding agency may override an automatic stay and proceed with contract performance upon a written determination that: either (1) performance of the contract is in the best interest of the United States; or (2) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General. *See* 31 U.S.C. § 3553(d)(3)(C). Despite the Government's argument to the court, on October 19, 2016, that this procurement was "mission critical," DIA did not issue a statutory override. Finally, nothing before the court demonstrates that "urgent and compelling circumstances" dictate that DIA cannot wait for the GAO's determination.

---

[14] In cases involving override of the CICA automatic stay, however, the United States Court of Federal Claims has taken the position that declaratory relief is appropriate, as Congress specifically did not require any evaluation of injunctive relief factors as a prerequisite to a stay of contract performance. *See Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005) ("[I]t would be contrary to the legislative scheme to impose [the four factor test]. . . . Declaratory relief preserves the scheme that Congress enacted.").

11

### III. CONCLUSION.

For these reasons, the court has determined that DIA's denial of the automatic stay, authorized by 31 U.S.C. § 3553, was arbitrary, capricious, unlawful, and an abuse of agency discretion. Accordingly, the court enters judgment declaring that Plaintiff's filing with the GAO was timely, for purposes of the 10-day deadline under 31 U.S.C. § 3553, and that DIA immediately must institute the CICA automatic stay, until Plaintiff's pending GAO bid protest, Case No. B-413937, is resolved.

In addition, the Government is hereby ordered to show cause on or before January 3, 2017, why the court should not impose the sanction of requiring the Government to pay Plaintiff's legal expenses to date.  *See* RCFC 11(b), (c)(3).

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**
