# In the United States Court of Federal Claims

No. 16-1365 C
Filed: May 31, 2017

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| | * | |
| FAVOR TECHCONSULTING, LLC, | * | Competition In Contracting Act |
| | * | ("CICA"), 31 U.S.C. § 3553 |
| Plaintiff, | * | (d)(3)(A) (Automatic Stay), |
| | * | (d)(3)(C) (Stay Override), |
| v. | * | (d)(4)(A) (Filing Period For |
| | * | Automatic Stay); |
| | * | Equal Access To Justice Act |
| THE UNITED STATES, | * | ("EAJA"), 28 U.S.C. § 2412. |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Todd Robert Overman**, Bass Berry and Sims PLC, Washington, D.C., Counsel for Plaintiff.

**Antonia Ramos Soares**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER REGARDING ATTORNEY FEES AND OTHER EXPENSES

**BRADEN**, *Chief Judge.*

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY.[1]

On May 26, 2016, the Defense Intelligence Agency (the "DIA") issued a Solicitation, wherein the DIA announced that it planned to issue three Blanket Purchase Agreements ("BPAs") for certain information technology services. *Favor TechConsulting, LLC v. United States*, 129 Fed. Cl. 208, 210 (2016).  On June 8, 2016, Favor TechConsulting, LLC ("FTC") submitted a quotation to the DIA. *Id.*

---

[1] The relevant facts and procedural history were derived from: the court's November 3, 2016 Memorandum Opinion And Order, *Favor TechConsulting, LLC v. United States*, 129 Fed. Cl. 208, 210–12 (2016); the nine Attachments to Favor TechConsulting, LLC's ("FTC") February 1, 2017 Motion For Attorneys' Fees And Related Expenses ("Pl. Mot. Atts. A–I."), including the January 25, 2017 Declaration of FTC's Chief Operating Officer Benjamin Lin ("1/25/17 Lin Decl."), the January 25, 2017 Declaration of a Certified Public Accountant, Alex Brager ("1/25/17 Brager Decl."), and the January 31, 2017 Declaration of FTC's counsel, Todd Robert Overman ("1/31/17 Overman Decl."); and the March 6, 2017 Government's Appendix attached to the Government's March 6, 2017 Response ("Gov't Fee App'x").

On September 27, 2016, FTC received an e-mail from a DIA Contracting Officer (the "CO") with an attached Unsuccessful Offeror Notification And Debriefing for FTC (the "Notice of Award"), dated September 27, 2016, notifying FTC that the three BPAs were awarded to other companies. *Id.*

On October 7, 2016, *i.e.*, 10 days later, FTC filed a protest with the Government Accountability Office ("GAO") challenging the DIA's evaluation criteria, and requested an automatic stay of performance, pursuant to the Competition In Contracting Act (the "CICA"), 31 U.S.C. § 3553(d)(3)(A).[2] *Favor TechConsulting*, 129 Fed. Cl. at 210–11.

On October 13, 2016, the DIA's counsel notified FTC that the BPAs were awarded on September 26, 2016, not September 27, 2016, so that FTC's protest was untimely for purposes of the CICA automatic stay. *Id.* at 211; *see also* 31 U.S.C. § 3553(d)(4)(A) (providing that automatic stay will be applied if protest is filed within the "period beginning on the date of the contract award and ending on . . . the date that is 10 days after the date of contract award").

On October 14, 2016, FTC filed a Pre-Filing Notice Of Protest, as required by Rule 2 of Appendix C of the Rules of the United States Court of Federal Claims ("RCFC"). *Favor TechConsulting*, 129 Fed. Cl. at 211. Shortly thereafter, the Government contacted FTC and provided a copy of the cover pages of all three BPAs to show that a representative of the respective awardees signed the BPA on September 26, 2016. *Id.* The BPAs, however, also showed, under section 31c "Date Signed," that the CO signed on September 27, 2016. *Id.* Two of the BPAs also showed an "Award/Effective Date" of September 27, 2017. *Id.*

On October 19, 2016, FTC filed a Complaint ("Compl.") in the United States Court of Federal Claims, alleging that the DIA's failure to implement the automatic stay was arbitrary, capricious, lacked a rational basis, and was contrary to applicable law, and requesting an injunction to prevent the DIA from proceeding with performance of the BPAs, until a decision was issued on FTC's pending GAO protest. ECF No. 1. On that same day, FTC also filed: a Motion For Declaratory Judgment; a Motion For A Temporary Restraining Order; a Motion For A Preliminary

---

[2] Section 3553(d)(3)(A) of the CICA provides:

> If the Federal agency awarding the contract receives notice of a protest in accordance with this section during the period described in paragraph (4)—
>
> (i) the contracting officer may not authorize performance of the contract to begin while the protest is pending; or
>
> (ii) if authorization for contract performance to proceed was not withheld in accordance with paragraph (2) before receipt of the notice, the contracting officer shall immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in  additional obligations being incurred by the United States under that contract.

31 U.S.C. § 3553(d)(3)(A).

Injunction; and a Memorandum Of Points And Authorities In Support Of Plaintiff's Motions. ECF Nos. 4–5. Also on that same day, the court convened a telephone status conference, during which the Government represented that the automatic stay was not instituted, because the actual date of award was September 26, 2017, and the procurement was "mission critical." *Favor TechConsulting*, 129 Fed. Cl. at 211.

Thereafter, on October 19, 2016, the court issued a Memorandum Opinion And Temporary Restraining Order ("TRO"), to prohibit performance of the three BPAs until October 26, 2016, so that the Government had time to demonstrate that award in fact was made on September 26, 2016 and, if the procurement indeed was "mission critical," to obtain an override, pursuant to 31 U.S.C. § 3553(d)(3)(C).[3] *See Favor TechConsulting*, *LLC v. United States*, No. 16-1365, 2016 WL 6123571 (Fed. Cl. Oct. 19, 2016).

On October 24, 2016, the court convened a telephone status conference, during which the Government advised the court that a filing would be made later in the day. *See Favor TechConsulting*, 129 Fed. Cl. at 211. Accordingly, the court extended the TRO until November 3, 2016, to afford Plaintiff time to respond to the Government's filing. *See Favor TechConsulting LLC v. United States*, 129 Fed. Cl. 392, 393 (2016). Later that day, the Government filed a Brief In Response To The Court's October 19, 2016 Order ("Gov't Resp.") and an Appendix ("Gov't App'x") including: e-mails generated by the DIA's Contracting Management System ("CMS"); the CMS Operations Manual; and the October 24, 2016 Declarations of Donald Camden, the DIA Contracting Chief; Ryan Corcoran Luhman, a DIA CO; and Holly Carr, a DIA Contracting Specialist. ECF No. 10. On October 31, 2010, FTC filed a Reply. ECF No. 11.

On November 3, 2016, the court entered a Memorandum Opinion And Order determining the DIA's denial of the CICA automatic stay to be arbitrary, capricious, unlawful, and an abuse of agency discretion, and entered judgment declaring that FTC's filing with the GAO was timely for purposes of the 10 day deadline under the CICA. *See Favor TechConsulting*, 129 Fed. Cl. at 217. Accordingly, the court ordered the DIA to institute the CICA automatic stay until FTC's pending GAO bid protest was resolved. *Id.*

---

[3] Section 3553(d)(3)(C) of the CICA provides:

The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—
    (i) upon a written finding that—
        (I) performance of the contract is in the best interests of the United States; or
        (II) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and

    (ii) after the Comptroller General is notified of that finding.

31 U.S.C. § 3553(d)(3)(C).

On November 4, 2016, the DIA filed a Notice Of Corrective Action with the GAO, indicating that the DIA would re-evaluate proposals and make a new source selection decision.  Pl. Mot. Att. A.  On November 8, 2016, the GAO issued a decision dismissing FTC's protest, because the DIA had taken corrective action.  Gov't Fee App'x at A1.

On February 1, 2017, FTC filed a Motion For Attorneys' Fees And Related Expenses ("Pl. Mot."), pursuant to the Equal Access To Justice Act, 28 U.S.C. § 2412 (the "EAJA").  ECF No. 18.  On March 6, 2017, the Government filed a Response ("Gov't Resp.").  ECF No. 19.  On March 13, 2017, the Government filed a Notice Of Additional Authority ("Gov't Notice").  ECF No. 20.  On March 23, 2017, FTC filed a Reply ("Pl. Reply") and attachments ("Pl. Reply Atts. A–C").  ECF No. 21.

## II.    DISCUSSION.

### A.    Plaintiff's February 1, 2017 Motion For Attorneys' Fees And Related Expenses.

The United States Supreme Court has held that recovery under the EAJA requires: "(1) that the claimant be a 'prevailing party'; [4] (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement."  *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990).

FTC argues that it is entitled to reasonable attorney fees and related expenses under the EAJA.  Pl. Mot. at 4.  First, FTC asserts that it is a "prevailing party," because it obtained a judgment from the court requiring the DIA to institute the CICA automatic stay, *i.e.*, FTC received the relief it requested.  Pl. Mot. at 5–6.  In addition, FTC meets the EAJA's net worth and size

---

[4] To be considered a "prevailing party" under the EAJA, a fee applicant must be a "party."  *See* 28 U.S.C. § 2412(d)(1)(A) (providing for the award of attorney fees and expenses to a "prevailing *party*" (emphasis added)).  The EAJA defines "party" as:

> (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a)), may be a party regardless of the net worth of such organization or cooperative association or for purposes of subsection (d)(1)(D), a small entity as defined in section 601 of Title 5[.]

28 U.S.C. § 2412(d)(2)(B).

requirements, [5] because it is a small business that had fewer than 500 employees and a net worth that did not exceed $7,000,000 when the October 19, 2016 Complaint was filed. Pl. Mot. at 5; *see also* Pl. Mot. Att. C-1 (FTC's 2014 & 2015 Audited Financial Statements); C-2 (FTC's 2015 Federal Income Tax Return); C-3 (FTC's payroll for October 2016); C-4 (FTC's unaudited 9/30/16 balance sheet).

Since FTC has established that it is a "prevailing party," the burden then shifts to the Government to establish that its position was not "substantially justified." Pl. Mot. at 6. But, the Government's litigation position was not "substantially justified." Pl. Mot. at 6–7 (citing *Gavette v. Office of Pers. Mgmt.*, 808 F.2d 1456, 1467 (Fed. Cir. 1986) ("'[S]ubstantial justification' requires that the Government show that it was clearly reasonable in asserting its position, including its position at the agency level, in view of the law and facts.")). In addition, there are no "special circumstances" that would make an award of attorney fees unjust. Pl. Mot. at 7.

FTC adds that the February 1, 2017 Motion For Attorneys' Fees was timely. Pl. Mot. at 5. An EAJA fee application must be submitted within 30 days of a judgment becoming "final *and not appealable*." 28 U.S.C. § 2412(d)(2)(G) (emphasis added). Under the Federal Rules of Appellate Procedure, the Government had 60 days to appeal the court's November 3, 2016 Memorandum Opinion And Order. Fed. R. App. Proc. 4(a)(1)(B)(i) ("The notice of appeal may be filed by any party within 60 days after entry of the judgment or order . . . if one of the parties is . . . the United States[.]"). As such, the November 3, 2016 Memorandum Opinion And Order became "not appealable" on January 3, 2017, *i.e.*, 60 days after it was filed. Pl. Mot. at 5. FTC then filed its application for attorney fees on February 1, 2017, *i.e.*, less than 30 days later. Pl. Mot. at 5.

Because FTC has met the legal standard for recovery under the EAJA, it is entitled to reasonable attorney fees and other expenses. [6] *See* 28 U.S.C. § 2412(d)(2)(A). In support, FTC

---

[5] FTC is a corporation incorporated in the state of Virginia, and therefore must meet the EAJA's net worth and size requirements for a corporation, *i.e.*, it must have had fewer than 500 employees and a net worth that did not exceed $7,000,000 at the time the October 19, 2016 Complaint was filed. *See* Pl. Mot. Att. C-1 at 1 (describing FTC as a "Virginia Corporation"); *see also* 28 U.S.C. § 2412(d)(2)(B) (providing the net worth requirements for corporations).

[6] "Fees and other expenses" are defined by EAJA as:

the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in

filed an itemized statement that shows the "actual time expended and the rates at which fees and other expenses were computed." Pl. Mot. at 8; *see also* 28 U.S.C. § 2412(d)(1)(B) (providing that a fee application must include "an itemized statement from any attorney . . . representing . . . the party stating the actual time expended and the rate at which fees and other expenses were computed"). This statement evidences the fees and expenses that FTC incurred in litigating this case and preparing the fee application. Pl. Mot. at 9; *see also* Pl. Att. G. (itemized statement accounting for 116.9 attorney hours spent on this case). FTC's itemized statement also accounts for the United States Court of Federal Claims' $400 filing fee. Pl. Att. I. In addition, FTC's itemized statement accounts for "law clerk" costs, because a prevailing party may recover paralegal costs at the prevailing market rate. Pl. Mot. at 8–9 (citing *Info. Scis. Corp. v. United States*, 88 Fed. Cl. 627, 635 (2009)); *see also* Pl. Att. G. (accounting for 13 law clerk hours).

In this case, the attorney fees should be increased by a cost of living adjustment, because the Consumer Price Index ("CPI")[7] increased after the March 1996 enactment of the EAJA. Pl. Mot. at 9–10; *see also Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 705 (2010) (explaining that cost of living adjustments should be "freely granted"). FTC is incorporated in Virginia, and located in Arlington, Virginia, and FTC's counsel, Todd Overman of Bass Berry and Sims PLC, is located in Washington, D.C. Pl. Mot. at 10; *see also* Pl. Mot. Att. C-1 at 1 (describing FTC as a "Virginia Corporation" located in Arlington, Virginia); 1/31/17 Overman Decl. ¶ 1. The cost of living adjustment should therefore be based on the bimonthly local CPI for the Washington, D.C., and Baltimore, Maryland metropolitan area (the "Washington, D.C. CPI"),[8] that indexes the cost of living in Washington, D.C, and Northern Virginia. Pl. Mot. at 10.

The CPI cost adjustment was calculated by first dividing the bimonthly CPI for the months in which the fees were incurred by the "baseline" CPI for November 1996.[9] Pl. Mot. at 10. These figures were then multiplied by the EAJA rate of $125. Applying the CPI cost adjustment to the

---

the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)[.]

28 U.S.C. § 2412(d)(2)(A).

[7] The CPI program is managed by the United States Department of Labor's Bureau of Labor Statistics (the "BLS"), and provides "monthly data on changes in the prices paid by urban consumers for a representative basket of goods and services." *Consumer Price Index*, BLS, https://www.bls.gov/cpi/#tables (last visited May 23, 2017).

[8] The BLS publishes a monthly, national CPI for the urban consumers within the United States. *Guide To Available CPI Data*, BLS (June 29, 2016), https://www.bls.gov/cpi/cpifact8.htm. The BLS also publishes CPIs for 26 "metropolitan areas," including a local CPI for the Washington, D.C. and Baltimore, Maryland metropolitan area, that is published on a bimonthly basis. *Id.*

[9] The local CPI is not available for the Washington, D.C. and Baltimore, Maryland metropolitan area for March 1996. Pl. Mot. at 10.

$125 EAJA rate resulted in a cost adjusted hourly rate of $196.97 for fees incurred in October, 2016, and a cost adjusted hourly rate of $197.13 for fees incurred in November 2016 through January 2017. Pl. Mot. Att. I.

Based upon the number of hours spent on the litigation and in preparing the fee application, as modified by the cost of living adjustment, FTC requests:

- 67.3 hours of attorney fees at the $196.97 cost adjusted hourly rate for October 2016, or $13,256.08; and
- 49.6 hours of attorney fees at the cost adjusted hourly rate of $197.13 for November 2016 through January 2017, or $9,777.65.

Pl. Mot. Att I. FTC's calculations resulted in a total of $23,033.73 in attorney fees. Pl. Mot. Att. I. In addition, FTC requests 13 hours of law clerk fees at the prevailing market rate of $122, or a total of $1,586. Pl. Mot. Att. F. Finally, FTC requests reimbursement for the United States Court of Federal Claims' $400 filing fee. Pl. Mot. Att. F. In sum, FTC requests a total award of $25,019.73. Pl. Mot. Att. I.

**B.      The Government's Response.**

The Government agrees that FTC is a "prevailing party" within the meaning of the EAJA, and there are no special circumstances that would make a fee and expense award unjust, but the Government nevertheless insists that FTC's application should be denied, because the Government's position in this litigation had a "reasonable basis" in fact and law and therefore was "substantially justified." Gov't Resp. at 6–7. The Government's litigation position had a reasonable basis in law, because the express terms of the CICA statute provide that the automatic stay applies only when an agency receives notice of the protest from the GAO within "10 days of contract award." Gov't Resp. at 9–10 (citing 31 U.S.C. § 3553(d)(3)(A)); *see also* 48 C.F.R. § 33.104(c)(1) (same). Likewise, the United States Court of Federal Claims has recognized that the award date controls the availability of the CICA automatic stay. Gov't Mot. at 10 (citing *Systems Plus, Inc. v. United States*, 68 Fed. Cl. 206, 208 (2005) ("Plaintiff concedes that suspension is not required . . . because the protest was more than ten days after contract award.")).

In addition, after the court issued the November 3, 2016 Memorandum And Order, the Government subsequently identified several decisions that "establish that agencies are not required to stay performance under the CICA statute[,] when the GAO provides notice to [an] agency of the protest more than ten days after contract award."[10] Gov't Mot. at 10–11 (citing *McDonald Welding & Machine Co. v. Webb*, 829 F.2d 593, 596 (6th Cir. 1987); *Tech. For Comm. Intern., Inc. v. Garret*, 782 F. Supp. 1446, 1454–55 (D.D.C. 1991); *Info. Res. Inc. v. United States*, 676 F. Supp. 293, 295–96 (D.D.C. 1987); *Honeywell Fed. Sys., Inc. v. United States*, No. 88-3320, 1988 WL 123704, at *3–4 (D.D.C. Nov. 10, 1988)).[11] These cases demonstrate that the GAO may take

---

[10] The Government concedes that these cases were not cited in the Government's October 24, 2016 Response. Gov't Resp. at 11.

[11] The Government adds that there are GAO decisions that stand for the same principle. *See Crown Engineering*, B-255439, 1994 WL 142531, at *3 n.4 (Comp. Gen. 1994) (Under CICA

as long as a day to provide notice to the agency, and this may result in the protestor getting only nine, rather than ten, days to file a protest. Gov't Mot. at 12. But, this "does not justify interpreting the statute and regulatory provisions in derogation of the clear language of those provisions." Gov't Mot. at 12 (citing *Tech. For. Comm.*, 783 F. Supp. at 1454).

In the reasoning of other federal courts and the GAO, the court's rejection of the Government's position does not provide basis for the court to also conclude that the Government's position was not substantially justified. Gov't Mot. at 13. The lack of any binding precedent governing the interpretation of the CICA statute and analogous FAR provision cautions against an award of attorney fees in this case, because the United States Court of Appeals for the Federal Circuit has held that the court should consider whether the legal issue was "unsettled" or otherwise "novel or difficult," when determining whether the Government's position was "substantially justified." Gov't Resp. at 14–15 (citing *Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012)). In addition, the United States Court of Federal Claims has determined that the Government's interpretation of a FAR provision was "substantially justified," even though it produced an "absurd result," because there was no governing authority and the Government's reading was plausible, based upon the plain language of the FAR provision. Gov't Resp. at 15–16 (citing *Watterson Constr. Co. v. United States*, 106 Fed. Cl. 609, 617–19 (2012)).

In addition, the Government's position had a reasonable basis in fact, because it was supported by documents and procurement official declarations that showed "fully-executed contract packages" were generated on September 26, 2016.[12] Gov't Mot. at 16–17. FTC's objection to the proffered evidence as "parol evidence,"[13] has no relevance in a bid protest, where the "focus of judicial review of agency action remains the administrative record." Gov't Mot. at 18 (quoting *Axiom Res. Mgmt, Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)).

In any event, if the court determines that the Government's position did not have a reasonable basis in law and fact and was not "substantially justified," the court should nevertheless reduce the fee request by 15 hours that FTC's counsel spent researching legal issues that were irrelevant to the merits of this case, *i.e.*, they researched cases involving the parol evidence rule

---

and our Bid Protest Regulations, a contracting agency is required to suspend contract performance if it receives notice of a protest from [the GAO] within 10 calendar days of the date of contract award."); *Alpha Tech. Servs., Inc.*, B-250878, 1993 WL 35225, at * 4 (Comp. Gen. 1993) (same); *Firebrand Const. Corp.*, B-246182, 1992 WL 120601, at *2 (Comp. Gen. 1992) (same).

[12] The face of all three of the protested BPAs show that they were signed by the CO on September 27, 2016, but the Government argued that this date should have been ignored, because the DIA's computer system would not distribute the "fully executed contract packages" without a signature page. *See Favor TechConsulting*, 129 Fed. Cl. at 215–17.

[13] The parol evidence rule is "a rule of substantive law that prohibits the use of external evidence to add or otherwise modify the terms of a written agreement in instances where the written agreement has been adopted by the parties as an expression of their final understanding." *Baron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375 (Fed. Cir. 2004).

and the CICA statute's stay override provision. Gov't Resp. at 21–22. This case did not involve either of those issues. Gov't Resp. at 21–22. The Government adds that any cost-of-living adjustment should be calculated by using a median CPI, *i.e.*, the CPI at the mid-point between when the Complaint was filed and when the EAJA fee application was filed. Gov't Resp. at 20.[14]

### C.    Plaintiff's Reply.

FTC replies that the Government has not met the burden to establish that its position was "substantially justified," or "clearly reasonable" in law and fact. Pl. Reply at 2.

The Government's "reasonable basis" in law argument is premised on the "erroneous conclusion" that the BPAs were awarded on September 26, 2016, but the court determined that the BPAs were awarded on September 27, 2016. *See Favor TechConsulting*, 129 Fed. Cl. at 215–17. The Government also failed to justify a rationale that a contract may be awarded on any date of the Government's choice, irrespective of the date on the contract, and without notice. Pl. Reply at 3. Although the Government cites multiple cases in the March 6, 2017 Response, they stand only for the proposition that notice of a pending GAO protest must originate from the GAO for an agency to institute a CICA stay. Pl. Reply at 3–4. In fact, the notice of award date was not at issue in any of the federal court cases cited by the Government. Pl. Reply at 4.

In this case, the only notice that FTC could rely on to calculate the deadline for the CICA stay was September 27, 2016. *See Favor TechConsulting*, 129 Fed. Cl. at 215 ("The record is absolutely clear that [FTC] learned of the contract award via the September 27, 2016 Notice of Award . . . marked 'September 27, 2017' and no other date appears that awards the BPAs."). Nothing in the Government's Response supports the Government's litigation position in this case, because no precedential decision explains how a protestor may timely file a bid protest for purposes of the CICA stay without a notice of the date of the award. Pl. Reply at 5.

The Government's position also lacked a reasonable basis in fact, because the October 19, 2016 Government Appendix was comprised of "extra-record" evidence, *i.e.*, "post-procurement declarations from agency personnel or 'post-procurement documentation . . . designed to explain agency action.'" *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 167 (2011). None of these declarations can overcome the fact that the cover pages for each BPA stated the date of award was September 27, 2016. Pl. Reply at 7. Moreover, if the Government genuinely believed the contract was awarded on September 26, 2017, the Government would have appealed the court's decision. Pl. Reply at 8.

---

[14] The Government's March 6, 2017 Response also argued that FTC "erroneously" calculated the cost of living adjustment using the local Washington CPI, rather than the national CPI. Gov't Resp. at 20. But, on March 13, 2017, the United States Court of Appeals for the Federal Circuit held in *Parrott v. Shulkin*, 851 F.3d 1242 (Fed. Cir. 2017), that courts should use a local CPI, rather than a national CPI, when calculating a cost of living adjustment for attorney fees. *See id.* at 1249 (holding that "the local CPI approach . . . is more consistent with EAJA than the national approach."). As such, the Government filed the March 14, 2017 Notice Of Supplemental Authority, wherein it acknowledged the appellate court's holding that any cost of living adjustment should be made using the local CPI. ECF No. 20.

In addition, FTC contends that it is entitled to a cost of living adjustment, that is calculated by taking the arithmetic mean between the CPIs for November 2016 and January 2017. Pl. Reply at 10. This method is different from the method proposed by the February 1, 2017 Motion For Attorneys' Fees, that proposed two different cost adjusted rates, based on the September 2016 and November 2016 CPIs, respectively. *Compare* Pl. Mot. Att. I (proposing two different cost adjusted rates) *with* Pl. Reply at 10 (proposing a single adjusted rate based on a mean CPI). The new cost adjusted rate was calculated by dividing the arithmetic mean of the November 2016 and January 2017 CPIs by the November 1996 baseline CPI, and then multiplying that figure by the $125 statutory rate. Pl. Reply at 10. This resulted in a cost adjusted rate of $197.37. Pl. Reply Att. B.

FTC also argues that it should recover fees for the 15 hours its counsel spent researching parol evidence and CICA override cases. Pl. Reply at 11–12. And, FTC also requests additional fees for the 28.5 attorney fee hours incurred between the filing of the February 1, 2017 Motion For Attorneys' Fees and the March 23, 2017 Reply. Pl. Reply Att. C.

The new method of calculating the cost of living adjustment, and the 28.5 additional fee hours requested, raises the total amount requested to $30,683.60. Pl. Reply at 11.

### D.    The Court's Resolution.

#### 1.    Plaintiff Has Established It Is A "Prevailing Party," Under The Equal Access To Justice Act.

Although the parties do not dispute that FTC is a "prevailing party," the court has determined that this issue is worthy of consideration in light of the United States Court of Appeals for the Federal Circuit's recent decision in *Dellew Corporation v. United States*, 855 F.3d 1376 (Fed. Cir. 2017). In *Dellew*, our appellate court held that a bid protestor may not recover attorney fees as a "prevailing party," under the EAJA when the Government voluntarily takes corrective action before the United States Court of Federal Claims issues a written or oral ruling on the merits "that changes the parties' legal relationship." *Id.* at 1379–80. In other words, "[v]oluntary action cannot provide a sufficient basis for a court to confer prevailing status on a party." *Id.* at 1380. Therefore, our appellate court reversed a decision of the United States Court of Federal Claims to award attorney fees, when the presiding judge orally commented on the record that the Government either should take corrective action or she intended to rule against the Government, but no oral or written ruling issued before the Government voluntarily took corrective action. *Id.* at 1382.

In this case, FTC's October 19, 2016 Complaint did *not* request that the court adjudicate the merits of FTC's GAO bid protest. Compl. ¶¶ 6–7. Instead, the October 19, 2016 Complaint's single count requested only that the court enter an order implementing the automatic CICA stay. Compl. ¶¶ 27–30. The court granted this relief by the November 3, 2016 Memorandum Opinion And Order. *See Favor TechConsulting*, 129 Fed. Cl. at 217 ("DIA immediately must institute the CICA automatic stay, until Plaintiff's pending GAO bid protest . . . is resolved."). It is true that the DIA subsequently and voluntarily took corrective action regarding the basis for FTC's protest to the GAO. Gov't Fee App'x at A1. But, the DIA did not take any voluntary action on *the merits of FTC's claim in the United States Court of Federal Claims*, prior to the court's November 3, 2016 ruling. As such, *Dellew* does not apply, because FTC obtained the relief requested from a

court ruling prior to the agency corrective action.[15]  The court has therefore determined that FTC is a "prevailing party."

In coming to this conclusion, the court also finds that FTC's application was timely, FTC meets the EAJA's statutory size limits, FTC's counsel incurred fees in a civil action, and no special circumstances exist to make an award unjust.[16]  *See* 28 U.S.C. § 2412(d)(1)(A); *see also id.* § 2412(d)(2)(B), d(2)(G).

## 2.    The Government's Position Was Not "Substantially Justified."

The United States Supreme Court has defined "substantially justified" to mean "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565.  In determining substantial justification, the court must "look at the entirety of the [G]overnment's conduct and make a judgment call whether the [G]overnment's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991).  "To be 'substantially justified' means . . . more than merely undeserving of sanctions for frivolousness." *Pierce v. Underwood*, 487 U.S. 552, 566 (1988).  Moreover, on one hand, "Congress did not . . . want the substantially justified standard to be read to raise a presumption that the Government position was not substantially justified simply because it lost the case[.]" *Scarborough v. Principi*, 541 U.S. 401, 415 (2004) (citation and internal quotations omitted).  On the other hand, the EAJA "is not a talisman for permitting the [G]overnment to avoid liability in all cases." *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000).  And, The Government bears the burden of establishing, by preponderance of the evidence, that its position was substantially justified. *See Scarborough*, 541 U.S. at 414 ("The burden of establishing 'that the position of the United States was substantially justified' . . . must be shouldered by the Government.") (quoting 28 U.S.C. § 2412(d)(1)(A)); *see also Doty v. United States,* 71 F.3d 384, 385 (Fed. Cir. 1995) ("When a party has prevailed in litigation against the [G]overnment, the [G]overnment bears the burden of establishing that its position was substantially justified." (citations omitted)).  To satisfy its burden, the Government must justify its position throughout the litigation, including its pre-litigation conduct. *See Jean*, 496 U.S. at 159.

_____

[15] The *Dellew* opinion interprets the United States Supreme Court's opinion in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), wherein the Court held that a party could not be a "prevailing party" within the meaning of the federal attorney fees statutes, without a "judicially sanctioned change in the legal relationship of the parties," even when a party argues that its lawsuit was a "catalyst" for a subsequent voluntary action taken by the defendant. *Id.* at 605, 610.  In this case, the court's November 3, 2016 Memorandum Opinion And Order could be perceived as a "catalyst" for the DIA's subsequent corrective action decision.  But, this does not change the fact that the court's November 3, 2016 Memorandum Opinion And Order granted the precise relief requested by FTC's October 19, 2016 Complaint.

[16] The Government did not dispute FTC's assertions regarding its size or the timeliness of the February 1, 2017 Motion For Attorneys' Fees, nor did it dispute that FTC's counsel's fees were incurred in connection with the civil action before the court.  Gov't Reply at 7 n.2.  Nor did the Government argue that any special circumstances barred FTC from receiving a fee and expense award in this case.  Gov't Reply at 7 n.2.

In this case, the Government's position was that the award date that appeared on the Notice of Award and the contracts at issue should be disregarded, because the actual date of award could be determined by the date that the contracts were uploaded into the DIA's internal electronic record-keeping system. Therefore, it was not arbitrary, capricious, or contrary to law, for the DIA to provide FTC with one date on the Notice of Award, but subsequently to assert that a different award date controlled and that the mandatory CICA stay did not apply. The Government argues that this position had a reasonable basis in both fact and law.

With respect to the Government's factual position, the Government provided the court with declarations from DIA personnel, who stated that the BPA contracts at issue were signed by the CO and by the awardees on September 26, 2016, and were subsequently uploaded into DIA's electronic record-keeping system on that same day. Gov't App'x at A1–A3 (10/24/16 Camden Decl.); A4–A7 (10/24/16 Luhman Decl.); A144–148 (10/24/16 Carr Decl.). But, because of a lack of diligence on the part of DIA's contracting staff, all three of the contracts included an incorrect signature date for the CO, *i.e.*, September 27, 2016, instead of September 26, 2016. Gov't App'x at A1–A3 (10/24/16 Camden Decl.); A4–A7 (10/24/16 Luhman Decl.); A144–148 (10/24/16 Carr Decl.). Because of an additional clerical error, two out of the three contracts incorrectly stated that the "Award/Effective Date" was September 27, 2016. Gov't App'x at A10, A96. In addition, after the contracts were signed by the CO on September 26, 2016, the DIA elected not to send a Notice of Award to FTC until the following day, *i.e.*, September 27, 2016. Gov't App'x at A7 (10/24/16 Luhman Decl.); *see also* Pl. Mem. Ex. A (9/27/16 Award Notice). But, the Notice of Award also did not reflect the actual award date of September 26, 2016, and instead was dated September 27, 2016. Pl. Mem. Ex. A (9/27/16 Award Notice).

Nevertheless, the Government argues that its litigation position had a reasonable basis in law, *i.e.*, that the mandatory CICA stay did not apply, despite FTC relying on the DIA's Notice of Award—the only date made available to the public. Here, the Government cited the CICA statute that states that the automatic stay will apply when the GAO provides notice of the protest to the awarding agency during "the period beginning on the *date of the contract award* and ending on. . . the date that is 10 days after the *date of the contract award*." 31 U.S.C. § 3553(d)(4)(A) (emphasis added).

The Government also cites legal authority for the propositions that: (1) the 10 day period under the CICA is measured from the date of award; and (2) notice must be provided to the agency by the GAO within that 10 day period.[17]

---

[17] The Government first contends that a United States Court of Federal Claims decision explained that "Plaintiff concedes that suspension is not required . . . because the protest was [brought] more than ten days after contract award." *Systems Plus*, 68 Fed. Cl. at 208. The Government then cites persuasive authority from other federal courts for the proposition that agencies are not required to say performance without timely notice of the protest from the GAO. *See McDonald Welding*, 829 F.2d at 596; *see also Tech. For Comm. Intern., Inc.*, 782 F. Supp. at 1454–55 (determining that "[n]otice furnished to the agency by the protestor does not activate the mandatory stay provision" and that notice must instead come from the GAO); *Info. Res. Inc. v. United States*, 676 F. Supp. at 295–96 (determining that mandatory stay did not apply when GAO did not notify agency until more than 10 days after award); *Honeywell Fed. Sys., Inc*, 1998 WL

But, the Government does not provide *any authority* for the proposition that the dates on the contract documents—all of which in this case stated an award date of September 27, 2016, instead of September 26, 2016—can or should be disregarded when determining the contract's award date.  In fact, the non-binding authority cited by the Government cuts against this position.  Specifically, the 1994 GAO decision *Crown Engineering* determined the date of award by the contract document:

> [t]he contract document, submitted as part of the agency report, shows a September 28 agency signature, and clearly indicates an "award effective date" of October 1.  Since [the] protest was not received in our Office until October 15, more than 10 calendar days later, the [agency] was not required to suspend performance.

*Crown Engineering*, 1994 WL 42531 at *3 n.4.

The Government also fails to cite any authority for the proposition that an awarding agency need not notify an unsuccessful offeror of the award date, nor does it explain how an unsuccessful offeror is supposed to meet the GAO deadline, without knowledge of the award date. [18]  If the Government's position is accepted, agencies could withhold the date of award or, as in this case, mislead unsuccessful offerors as to the actual date of award, to avoid the CICA's automatic stay.

Not surprisingly, the Government concedes that "legal precedent [was] lacking" for its litigation position, but nevertheless argues this fact should counsel against an EAJA award.  Gov't Mot at 15.  The United States Court of Appeals for the Federal Circuit has held that courts should consider the "clarity of the governing law" and "whether a legal issue was novel or difficult," when determining whether the Government's position was substantially justified.  *Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012); *see also Schock v. United States*, 254 F.3d 1, 6 (1st Cir. 2001) ("When the issue is a novel one on which there is little precedent, courts have been reluctant to

---

123704, at *3–4 (same).  In addition, the Government provides citation to three GAO decisions, that stand for the proposition that the automatic stay period runs for 10 days after the date of contract award.  *Crown Engineering*, B-255439, 1994 WL 142531, at *3 n. 4 (Comp. Gen. 1994) ("Under CICA and our Bid Protest Regulations, a contracting agency is required to suspend contract performance if it receives notice of a protest from our Office within 10 calendar days of the date of contract award."); *Alpha Tech. Servs., Inc.*, B-250878, 1993 WL 35225, at * 4 (Comp. Gen. 1993) (same); *Firebrand Const. Corp.*, B-246182, 1992 WL 120601, at *2 (Comp. Gen. 1992) (same).

[18] FAR 8.405-3(b)(3) provides that

> [a]fter award, ordering activities should provide timely notification to unsuccessful offerors.  If an unsuccessful offeror requests information on an award that was based on factors other than price alone, a brief explanation of the basis for the award decision shall be provided.

48 C.F.R. § 8.405-3(b)(3).  In short, an unsuccessful offeror is entitled both to notice of award and an explanation of why they did not receive the award.

find the government's position was not substantially justified."). But, there is no *per se* rule that EAJA fees cannot be recovered where the Government's litigation position involves an issue of first impression. *See* 28 U.S.C. § 2412(d)(1)(B) (providing that substantial justification must be based on the "entire record"); *see also Dalles Irrigation Dist.*, 91 Fed. Cl. at 698 ("The novelty of a legal issue does not by itself satisfy the [G]overnment's burden of proof under EAJA."). Moreover, a rule that would deny a small business EAJA legal fees, because it was the first litigant to successfully challenge an agency's unlawful conduct would have a chilling effect on the very type of plaintiff the EAJA was enacted to assist. In this case, FTC should not be barred from an attorney fee award, because of the novel nature of the Government's position. Based on the entire record, the court has determined that that the Government failed to meet its burden to establish its litigation position was "substantially justified."

### 3.  Plaintiff May Recover Attorney Fees And Other Expenses.

EAJA provides that a "prevailing party" may recover "reasonable" attorney fees up to a maximum hourly rate of $125. *See* 28 U.S.C. § 2412(d)(2)(A). The statutory rate may be adjusted upwards, however, if the court determines that there has been an increase in the cost of living or that a special factor, such as the limited availability of qualified attorneys, justifies a higher fee. *Id.* A prevailing party may also recover "other expenses," including paralegal fees at the "prevailing market rates," up to the statutory maximum for attorney fees. *See* 28 U.S.C. § 2412(d)(2)(B) (providing for recovery of "other expenses"); *see also Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571, 590 (2008) (providing for the recovery of paralegal fees at "prevailing market rates"). In addition, a prevailing party may recover "supplemental" fees "not only for hours devoted to the underlying merits litigation, but also for attorney time reasonably expended defending an initial EAJA application." *Wagner v. Shinseki*, 640 F.3d 1255, 1259 (Fed. Cir. 2011). In order to recover these fees and other litigation expenses, the prevailing party must submit an "itemized statement . . . stating the actual time expended and rate at which fees and other expenses were computed. *See* 28 U.S.C. § 2412(d)(2)(B).

In this case, as attachments to the February 1, 2017 Motion For Attorneys' Fees, FTC submitted itemized statements of the fees charged by FTC's counsel from October 14, 2016 to January 31, 2017. Pl. Mot. Atts. F–G, I. By these itemized statements, FTC requested: $23,033.73 in cost adjusted attorney fees; $1,586 in "law clerk," *i.e.*, paralegal costs; and reimbursement for the United States Court of Federal Claims' $400 filing fee, or a total of $25,019.73 in fees and other expenses. Pl. Mot. Att. I. In addition, by the March 23, 2016 Reply, FTC filed an additional itemized statement, that recalculated the cost of living adjustment and requested additional attorney fees incurred from February 1, 2017, to March 23, 2017, such that FTC requested an additional $5,663.87 in fees, or a total of $30,683.60. Pl. Reply Atts. B–C.

In determining whether FTC may recover the full amount of fees requested, the court will first consider whether FTC properly calculated an upwards cost of living adjustment. The court will then consider whether all of the fees and expenses requested by FTC are "reasonable."

a.      **Plaintiff May Recover Fees At An Adjusted Hourly Rate of $197.29.**

The United States Court of Federal Claims may grant a cost of living adjustment when the CPI has increased since the March 1996 enactment of EAJA.  *See, e.g., Dalles Irrigation Dist.*, 91 Fed. Cl. at 705.  The United States Court of Federal Claims has calculated the cost of living adjustment by dividing the CPI for the month in which the fees were incurred by the baseline March 1996 CPI, and then multiplying that ratio by the $125 statutory rate.[19]   *See, e.g., Greenhill v. United States*, 96 Fed. Cl. 771, 784 (2011).  The United States Court of Appeals for the Federal Circuit has held that courts should use the local CPI of where the prevailing party's counsel is located, instead of a national CPI, when calculating a cost of living adjustment to the EAJA's $125 maximum hourly rate.  *See Parrott v. Shulkin*, 851 F.3d 1242, 1249 (Fed. Cir. 2017) ("The local CPI approach gives the most effect to the statutory text [of EAJA.]").

In this case, FTC's counsel is located in Washington, D.C.  1/31/17 Overman Decl. ¶ 1. The Washington, D.C. CPI is published bi-monthly by the BLS.  Pl. Mot. Att. H. (Washington, D.C. CPI for November 2016); Pl. Reply Att. A. (providing Washington, D.C. CPIs for January 2007 through January 2017).  Because the attorney fees and expenses in this case were incurred from October 2016 through March, 2017, FTC proposes to use the arithmetic mean of the November 2016 and January 2017 Washington, D.C. CPIs.  Pl. Reply at 10.  In addition, because the BLS did not calculate a Washington, D.C. CPI in March 1996, FTC proposes to use a baseline CPI from November 1996.  Pl. Reply at 11; *see also Porter v. Astrue*, 999 F. Supp. 2d 35, 41 (D.D.C. 2013) (using November 1996 Washington, D.C. CPI as the baseline CPI).

The court agrees with FTC that the November 1996 baseline CPI of 100 should be used when calculating the cost of living adjustment.  The court, however, declines to adopt the arithmetic mean approach proposed by FTC.

Review of the itemized statements submitted by FTC evidence that FTC's counsel spent the following amount of time on this case:

- 67.3 hours in October 2016
- 7.6 hours in November 2016;
- 1.2 hours in December 2016;
- 40.8 hours in January 2017;
- 1.3 hours in February 2017;
- and 27.2 hours in March 2017.

Pl. Reply Att. B.

In other words, of the 145.4 attorney hours spent on this case, roughly half (76.1) were incurred from October 2016 to December 2016, and the remaining half (69.3) were incurred from January 2017 to March 2017.  But, the majority of the fee hours incurred during the first "half" of

---

[19]   The EAJA's $125 statutory cap was enacted on March 29, 1996.  *See* Pub. L. No. 104–121 §§ 232(b)(1), 233, 110 Stat. 847, 863–64 (1996).

this case were incurred in October 2016, instead of in November 2016 or December 2016. A more accurate adjustment for increase in the cost of living requires the use of the September 2016 CPI instead of the November 2016 CPI. As such, the average CPI is calculated as the arithmetic mean between the September 2016 CPI of 157.572 and the January 2017 CPI of 158.086, or an average CPI of 157.829. Pl. Reply Att. A. (providing Washington, D.C. CPIs for September 2016 and January 2017). Therefore, the court finds that the adjusted rate should be calculated as follows:

Statutory Rate x Average Washington, D.C. CPI / Baseline CPI = Adjusted Rate

$125 x 157.829/100=$197.29.

In sum, FTC may recover attorney fees at a cost adjusted hourly rate of $197.29.

### b.     Plaintiff May Recover Fees For Time Spent Researching The CICA Automatic Stay And The Parol Evidence Rule.

FTC requests attorney fees for a total of 145.4 hours of attorney work, 67.3 hours of which were spent working on this case prior to the court's November 3, 2016 Memorandum Opinion And Order. Pl. Reply Att. B. The Government argues, however, that FTC should not recover fees for time spent researching legal concepts "that are irrelevant to this bid protest," *i.e.*, the parol evidence rule and the CICA's automatic stay override provisions. Gov't Resp. at 21–22. The Government insists that the parol evidence research was unnecessary in the bid protest context, because these cases are adjudicated on the administrative record. Gov't Resp. at 21–22. Likewise, the CICA override research was unnecessary, because the DIA did not seek an override. Gov't Resp. at 21–22.

It was reasonable for FTC's counsel to research the parol evidence rule, because this case concerned the Government's attempt to change the words of a written contract by extrinsic evidence. *See Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375 (Fed. Cir. 2004) ("The parole evidence rule is a rule of substantive law that prohibits the use of external evidence to add or to otherwise modify the terms of a written agreement 'in instances where the written agreement has been adopted by the parties as an expression of their final understanding.'"(quoting *David Nassif Assocs. v. United States*, 557 F.2d 249, 256 (Ct. Cl. 1977)).

Likewise, FTC's counsel's decision to research the law about the CICA's override provision also was reasonable. As the Government conceded, there is a lack of binding precedent about the CICA's automatic stay and review of automatic stay override decisions supported FTC's argument that the DIA's decision not to implement the stay was arbitrary, capricious, and contrary to law. In addition, the possibility of a stay override was raised during the October 19, 2016 telephone status conference, wherein the Government's counsel advised that the contested procurement was "mission critical." *See Favor TechConsulting*, 129 Fed. Cl. at 211. For these reasons, the court has determined that no time should be deducted for FTC's counsel's research of the parol evidence rule and the CICA's override provision. Therefore, FTC may recover attorney fees for the 67.3 hours spent in connection with this case, at the cost adjusted hourly rate of $197.29, *i.e.*, a total of $13,277.62.

###### c.      Plaintiff May Recover Supplemental Fees.

FTC also requests attorney fees for the 78.1 hours incurred after the court's November 3, 2016 Memorandum Opinion And Order.  This request concerns supplemental fees incurred in connection with the preparation and filing of FTC's EAJA application.  When calculating a supplemental fee award, the court is required to consider the relationship between the amount of the fee award and the results obtained through the attorney fees application.  *See Wagner*, 640 F.3d at 1259.

As part of the overall supplemental fee request, FTC also requests reimbursement for the time spent reviewing the corrective action undertaken by the DIA, on November 4, 2016, as well as a conference call with the Government's counsel and agency counsel regarding a potential settlement. Pl. Mot. Att. F. at 10 (11/4/16 entry for "Review and discuss corrective action proposed by Agency; discuss with client; conference call with DOJ and Agency counsel regarding potential settlement position").  These fees were not related to the litigation subject to the November 3, 2016 Memorandum Opinion And Order, nor were they related to FTC's subsequent application for fees under EAJA.  As such, the court has deducted 2.4 hours from FTC's fee request.

For these reasons, the court has determined that FTC may recover supplemental fees for the 75.7 hours spent preparing and defending FTC's EAJA application, at the cost adjusted hourly rate of $197.29, and therefore may recover $14,934.85 in supplemental fees.

###### d.      Plaintiff May Recover Law Clerk Fees At An Hourly Rate Of $122, As Well As The $400 Filing Fee For The United States Court Of Federal Claims.

FTC also requests "law clerk," *i.e.*, paralegal, fees at an hourly rate of $122 for the 13 hours spent doing research in support of FTC's litigation position in October 2016.  The hourly rate of $122 for paralegals in the Southeast Region of the United States is reflected in the National Association of Legal Assistants' 2016 National Utilization & Compensation Survey ("NALA Report"). Pl. Mot. Att. I at 21.  This rate is also lower than the non-cost adjusted $125 hourly rate for EAJA attorney fees. *See* 28 U.S.C. § 2412(d)(2)(A). The Government did not oppose receipt of law clerk fees at this hourly rate.  As such, the court has determined that FTC may receive law clerk fees at an hourly "prevailing market rate" of $122, and therefore may recover a total of $1,586 for the 13 fee hours incurred. *See Richlin*, 553 U.S. at 590.

FTC also requests reimbursement of $400 for the United States Court of Federal Claims filing fee, and the Government does not oppose this request.  Accordingly, FTC may recover the $400 filing fee.

###### e.      The Court's Award of Attorney Fees And Other Expenses.

The court has determined that FTC may recover both attorney fees and supplemental fees at a cost adjusted hourly rate of $197.29.  The court has determined that FTC may recover for 67.3 hours of attorney fees and 75.7 hours of supplemental fees, or a total of $28,212.47.  In addition, FTC may recover $1,586 in law clerk fees and the United States Court of Federal Claims' $400 filing fee.  In sum, FTC may recover a total of $30,198.47.

**III.     CONCLUSION.**

        For these reasons, Plaintiff's February 1, 2017 Motion For Attorneys' Fees And Related Expenses is granted, in part.  The Clerk of the United States Court of Federal Claims is directed to enter judgment in favor of Plaintiff in this case, in the amount of $30,198.47.

        **IT IS SO ORDERED.**

                                                                s/ Susan G. Braden
                                                                **SUSAN G. BRADEN**
                                                                **Chief Judge**